# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RAUNCHINO JAMES (M-39482), ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19 C 50103 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| LYNN CHATTIC, et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

The Court denies Plaintiff Raunchino James' amended application for leave to proceed *in forma pauperis* [12] as moot because James paid the full $400 fee. Summonses, however, shall not issue at this time as the Court dismisses James' complaint [1] for failure to state a claim. If James wants to proceed with this lawsuit, he must submit an amended complaint that addresses the concerns discussed in this order. If he does not comply by February 21, 2020, the Court will dismiss this case for failure to state a claim. The Court denies James' request for the Clerk to send copies of his submissions to him [10] as even setting aside his consistent income, there is no "right of subsidized access" to the Court. *Johnson v. Daley*, 339 F.3d 582, 586 (7th Cir. 2003). James must promptly submit a change-of-address notification if he is released or transferred to another facility. If he fails to do so, this case will be subject to dismissal with no further warning. The Clerk is directed to send James an amended complaint form and instructions, along with a copy of this order.

## STATEMENT

Plaintiff Raunchino James, a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 concerning numerous events that allegedly happened from December 2015 to April 2019 at the Dixon Correctional Center. The Court has before it James' amended application for leave to proceed *in forma pauperis* ("IFP"), his seventy-nine page complaint, and a twenty-eight page supplement.

*James' IFP Application*

The Court previously denied James' original IFP application and ordered him to either pay the full $400 statutory filing fee or submit a properly supported renewed application and a sworn statement (attaching supporting records if appropriate) disclosing the source of his income during the past twelve months, what he bought, and why the money he spent should not be counted against his ability to pay the filing fee. Doc. 9. The Court also ordered James to explain why he represented under oath that he received no income whatsoever in the past twelve months when he received a total of $997.68 in income in just the second half of the one-year lookback period and presumably received additional income during the first half of that period. *Id.*

In response, James renewed his IFP application and submitted a declaration claiming confusion and asserting that he needed to spend his income on food and personal items as "to think everything would be adequately provided at taxpayers expense that's an illusion." Doc. 8 at 16. Although James merely resubmitted the same trust fund ledgers that he originally provided, which end in April 2019 and thus are stale at this point, he submitted updated ledgers in a new case, *James v. Varga*, No. 19 C 50271 (N.D. Ill.), which indicate that he received an additional $1,037.46 from April 10, 2019, to October 9, 2019, and spent most of that income, leaving himself with $76.37 as of October 9, 2019.

James subsequently paid the full filing fee. Given that payment, the Court will allow James to proceed. However, the Court warns James that it will not so easily overlook any future untrue representations, whether about his finances or other matters. The Court also advises James that if he contemplates any additional litigation, he must save his income so he can pay the filing fee, rather than make discretionary expenditures. *See Sanders v. Melvin*, 873 F.3d 957, 960 (7th Cir. 2017) (a prisoner "can save up . . . and pay the filing fee"). This is the case even if James wants to shop at the commissary rather than use his money to pay his debt to the Court. For any future litigation James might contemplate, if he receives enough income to pay the $400 fee after receiving this warning about the obligation to save and is aware of the factual basis of a lawsuit but then elects to spend those funds on personal items, he will almost certainly not be allowed to pay the fee in installments. *See Kennedy v. Huibregtse*, 831 F.3d 441, 443 (7th Cir. 2016). This is the case even if James renews his IFP application when his balance is less than the full $400 filing fee if he could have paid the fee by refraining from making personal purchases since the Court need not grant IFP status when an inmate has depleted his account of funds by purchasing commissary items. *See Newlin v. Helman*, 123 F.3d 429, 435 (7th Cir. 1997) (noting that a prisoner who "squander[s]" all his assets is not entitled to proceed *in forma pauperis*), *overruled on other grounds by Walker v. O'Brien*, 216 F.3d 626 (7th Cir. 2000). Moving forward, James should, therefore, reflect carefully when he decides whether to spend his income on personal items.

*Initial Review of James' Complaint*

Although James has paid the filing fee, his complaint is still subject to screening under 28 U.S.C. § 1915A because he was in custody when he initiated this lawsuit. *See Jones v. Bock*, 549 U.S. 199, 214, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007) (explaining that court must screen *pro se* prisoners' complaints and dismiss the complaint, or any claim therein, if the complaint or claim is frivolous or malicious, fails to state a claim, or seeks monetary relief against an immune defendant); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). For purposes of initial review, the Court must accept the well-pleaded facts in the complaint as true, *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013), and construes James' *pro se* submissions liberally, *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007).

James' submissions (a complaint and supplement totaling 107 pages) set forth a lengthy convoluted chain of events dating back to December 7, 2015, when James' left eyelid felt "sore." Doc. 1 at 7. Two days later, James' "eye irritation" worsened when he "decided to rinse his eye out" in his in-cell sink, which he claims dispensed water with visible brown flecks that were

dangerous if touched or ingested. *Id*. The rest of James' submissions consist of extremely detailed factual allegations and summations of his opinions about numerous events, much like a diary, until his narrative ends in April 2019. James names Drs. Zahtz, James, and Garcia, Nurse Lynn Chattic, Nurse Practitioner Susan Tuell, Warden John Varga, the "Illinois State Prison," "Old Warden" Donald Enloe, and Officer Guelde as Defendants.

There are several initial problems with James' complaint. First, it fails to comply with Federal Rule of Civil Procedure 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint is essentially a stream-of-consciousness narrative that provides James' perspectives about each individual he interacted with over the past four years regarding his eye and many other matters. While a minor amount of surplus material in a complaint is not enough to frustrate Rule 8's goals, unnecessary length coupled with repetitiveness, needless complexity, and immaterial allegations are grounds for dismissal. *Kadamovas v. Stevens*, 706 F.3d 843, 844 (7th Cir. 2013). This rule is based on the Seventh Circuit's observation—which is directly applicable to this case—that a disjointed and prolix presentation "may make a complaint unintelligible, by scattering and concealing in a morass of irrelevancies the few allegations that matter." *Id.* (quoting *United States ex rel. Garst v. Lockheed-Martin Corp.,* 328 F.3d 374, 378 (7th Cir. 2003)); *see also Bakhtiari v. Bagwell*, No. 3:15-CV-00922-SDY, 2015 WL 5675835, at *1 (S.D. Ill. Sept. 28, 2015) (striking inmate's lengthy and confusing complaint because it "violates Federal Rule of Civil Procedure 8, such that a § 1915A review of it is unworkable"). James' submissions clearly run afoul of this basic rule. This is even more true given that he has provided two documents (his complaint and a supplement) that overlap in places but provide different details, creating a hodgepodge of allegations.

Second, the Court advises James that the statute of limitations for a § 1983 action arising in Illinois (in other words, the time period in which a lawsuit may be brought) is two years. *See, e.g.*, *Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016). Absent a basis for tolling (in other words, pausing) the limitations period, it appears that potential claims based on at least some of the unrelated events chronicled in the complaint, which goes all the way back to 2015, may be untimely. Moreover, § 1983 "[l]iability is defendant-specific" so "a claim against any particular person accrues immediately when that person loses the ability 'to do something about [the plaintiff's] condition.'" *Heard v. Elyea*, 525 F. App'x 510, 511–12 (7th Cir. 2013) (quoting *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001)). Thus, the statute of limitations begins to run when a Defendant "no longer has the power to do anything about the condition." *Ollison v. Wexford Health Sources, Inc.*, No. 16 C 00662, 2016 WL 6962841, at *5 (N.D. Ill. Nov. 29, 2016) (citing *Heard*, 253 F.3d at 318). If any of the Defendants left Dixon more than two years (plus any applicable tolling periods) before James filed this suit, the claims against those Defendants may be time-barred. As James decides how to proceed, he should keep this in mind and provide beginning and end dates for his interactions with the various Defendants, to the best of his ability.

Third, the "Illinois State Prison" (presumably, the Illinois Department of Corrections) is not a proper party because it is not a suable entity (in other words, the type of entity that can be held liable in a § 1983 action). *See Taylor v. Stateville Dep't of Corr.*, No. 10 C 3700, 2010 WL 5014185, at *2 (N.D. Ill. Dec. 1, 2010) ("There is no such entity as the 'Stateville Department of

3

Correction;' whether Plaintiff is intending to sue the Stateville Correctional Center or the Illinois Department of Corrections, neither is a suable Defendant"). Thus, an amended complaint should not name the Illinois Department of Corrections or Dixon as Defendants.

Given these threshold deficiencies, James' complaint cannot proceed to the screening stage, let alone survive initial review. The Court therefore dismisses the complaint without prejudice. If James wants to proceed with this lawsuit, he must submit an amended complaint on the Court's required form, *see* N.D. Ill. L.R. 81.1, that includes **only factual allegations** (not legal conclusions, citations, or discussion) from which federal liability may be inferred against each named Defendant. *See Twombly*, 550 U.S. at 555 (explaining that a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and also must be enough to "give the defendant fair notice of what the claim is and the grounds upon which it rests."). In other words, James must identify the individuals who allegedly wronged him, provide a basic description about what they specifically did or did not do without the use of any legal language, and provide a general timeline to the best of his ability. *See Garst*, 328 F.3d at 378 ("Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud."). James should also carefully consider whether to attach any exhibits to any amended complaint, as the Court is not required to parse them in an effort to identify potential claims (to the extent this might even be possible).

James must write both the case number and the judge's name on the amended complaint, sign it, and return it to the Prisoner Correspondent. The Court cautions James that an amended pleading supersedes the original complaint and must stand complete on its own. Therefore, all allegations against all defendants must be set forth in the amended complaint without reference to the original complaint. He must attach any documents he wants the Court to consider in its threshold review of the amended complaint. The Court advises James to keep a copy for his files.

The Clerk will furnish James with an amended complaint form and instructions along with a copy of this order. If James fails to comply with this order by the date stated above, the Court will summarily dismiss this action. The Court also reminds James that he must promptly submit a change-of address notification if he is released or transferred to another facility. Failure to do so may lead to dismissal of this action for want of prosecution.

Date: January 14, 2020 /s/ Sara L. Ellis